# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                     )

                            )    **Case No. 15-01578-TLM**

**DAVID RICHARD DAVIES,**    )

                            )    **Chapter 7**

             **Debtor.**       )

_____ )

## MEMORANDUM OF DECISION
_____

**PROCEDURAL BACKGROUND**

The chapter 7 debtor, David Davies ("Davies"), filed his petition on November 30, 2015.[1]  Davies received a discharge on March 14, 2016, and the case was closed as a no asset case on April 7, 2016.

On January 27, 2017, Davies filed a state court complaint against Carmen Becker ("Becker"), a woman with whom he had been in an extended relationship. Becker filed an answer and asserted several counterclaims.  Subsequently, on August 1, 2017, Davies reopened his bankruptcy case and filed a motion in this Court seeking imposition of contempt sanctions against Becker for violation of his discharge injunction based on her assertion of those counterclaims.  Doc. No. 43

_____

[1]  Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and rule references are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

("Motion").[2]

This matter was heard on September 5 and 7, 2017, at which time Davies and Becker, each represented by counsel, appeared and presented evidence and argument.[3]  The Motion was taken under advisement.  This decision resolves the same and constitutes the Court's findings of fact and conclusions of law.

**FACTS**

Davies and Becker commenced their relationship in 2010, ultimately living together though they never married.

They together purchased a house in January 2012, with Davies putting $70,000 down and incurring a loan for the balance of the purchase price.  Title was held solely in Davies' name.  However, Becker agreed to pay Davies funds which would service the debt on the house and, in her view, develop "equity" in the property.  The parties treated the house as jointly owned, and kept a ledger of Becker's payments toward the house debt, which they called "rent," and the parties' other household payments and expenses.  Ex. 120.

When Davies filed his case in 2015, he claimed the house as his asset

---

[2]  Parties who violate the discharge injunction may be liable under a theory of contempt, which is an exclusive remedy because debtors have no "private right of action" for damages. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002).  Generally speaking, civil contempt sanctions for violation of the discharge injunction must be sought by motion rather than through an adversary proceeding.  *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190–91 (9th Cir. 2011); *see also* Fed. R. Bankr. P. 9020.

[3]  *See* Doc. Nos. 52, 54 (minute entries).  Davies and Becker were the only witnesses.

MEMORANDUM OF DECISION - 2

alone.[4]  He disclosed no co-owner, nor did he complete schedule A's required

disclosure of "nature of debtor's interest in property."  Davies' bankruptcy counsel

requested that he obtain a written statement from Becker to the effect that she lived

with him, paid "rent" and contributed to the household expenses, and she executed

such a statement.  Ex. 100.[5]

   In June 2013, Davies and Becker had a son.[6]  In 2014, though, Davies and

Becker were having difficulties and had even started couples' therapy.  That

summer, there were email discussions of the possibility of Becker moving out and

about how the parties might settle their intermingled financial affairs.  Ex. 119.  In

these discussions Davies indicated that Becker's "rent" was used to make

payments on the first mortgage loan and, thus, was building "equity."  *Id*.[7]  He also

indicated that if she were to stay, and when the first mortgage was paid, he would

retitle the house showing them as co-owners.  *Id.*

---

   [4]  In his schedules, Davies claimed the house was worth $168,800.00 at filing with
secured claims of $83,474.36 against it.  The secured claims are shown as being owed to Idaho
Central Credit Union with a "first mortgage" incurred on January 27, 2012, in the amount of
$55,092.00 at filing, and a "second mortgage" incurred on March 1, 2013, in the amount of
$28,382.36.  Ex. 200 at sched. A and D.

   [5]  Her letter is dated April 7, 2015.  Davies contemplated filing for bankruptcy relief as
early as the spring of 2015, and thus obtained such a letter.  As noted, he did not ultimately file
until November 30, 2015.

   [6]  Though Davies' schedule J indicates another child also lived with him, the parties'
children from prior relationships, and where they lived, are not critical to this Decision.

   [7]  He also acknowledged that the second mortgage was a HELOC that he had taken out to
pay his legal bills involving litigation with his ex-wife and that this was his sole and separate
liability.  *Id.*

MEMORANDUM OF DECISION - 3

By late 2014, however, things had deteriorated. Part of the pressures resulted from ongoing litigation between Davies and an ex-wife over support and other issues.[8] In emails, Becker asked "How would you like to pay the equity in I [*sic*] house, that belongs to me." Davies replied, "It [*sic*] yours if you want it. I can pay you tonight." Becker stated "Ok. Thanks." Davies then wrote, "Attached is the current standing on the loan. I believe I owe you $11,054.99." He then stated, "I will pay you once everything is settled and you have moved out." Ex. 201.[9]

Davies testified he paid Becker $10,000 in December 2014, taking the funds out of the HELOC. Becker indicated that $10,000 was the maximum amount Davies could draw on his line of credit. This payment left approximately $1,055 owed to Becker according to Davies' calculation.

However Davies later asserted that this was not a payment of accrued equity but, rather, a $10,000.00 "loan" to Becker. He claimed that, under their loan "agreement," Becker was to start repaying the loan once she gained employment.[10] Davies would a year later in his bankruptcy schedule B list the $10,000.00 as a

---

[8] *See, e.g.*, *Davies v. Davies*, 368 P.3d 1017 (Idaho Ct. App. 2016) (addressing Davies' 2011 divorce from ex-wife Susan Davies, and affirming awards to her in 2013 and 2014 of attorneys' fees totaling $29,500.00, and affirming orders in her favor modifying child support obligations).

[9] There are emails in the Ex. 201 chain both preceding and following the excerpts quoted. The emails do not show any attachment regarding Davies' calculation.

[10] The evidence reflects no written document memorializing any loan or its terms.

MEMORANDUM OF DECISION - 4

"personal loan" owed to him by Becker under the category of "accounts receivable."  Ex. 200 at 10.

Things between Davies and Becker steadily worsened.[11]

Davies was scheduled to take a week-long trip to Mexico on October 14, 2015.  At the last minute he asked Becker to accompany him, but she declined. While Davies was in Mexico, Becker moved out of the house, taking what she deemed to be her property and personal effects.  She had family members assist her, and some of the items were placed into storage areas.  She testified she could not be absolutely certain whether or not any of Davies' personal property might have mistakenly been included.

Davies returned from Mexico and took the position that some of his property was either "stolen" or "destroyed."  Under cross-examination Davies acknowledged that he filed an October 27, 2015 police report alleging such theft and destruction.  The final disposition of that report was not made clear.  Davies later contacted a supervisor at the Idaho National Guard where Becker's brother was employed, to raise issues about these events and the brother's involvement. Becker found this action to be an extremely distressing form of attempted coercion

---

[11]   As with certain other aspects of their domestic discord, the details are not directly relevant to the resolution of the Motion.  They have been carefully considered, however, in assessing credibility and determining the weight to be given the parties' testimony.

MEMORANDUM OF DECISION - 5

of her in the ongoing disputes between her and Davies.[12]

Even though the parties continued to have email communications about how to resolve their disputes, financial and otherwise, things continued to deteriorate. It reached a peak in early November 2015, when Davies sent an email to Becker with the terse message: "The next move is yours – escalate or cooperatively work together? I am ready for either." Ex. 206.[13] The following day, he sent a text message that severely shook Becker. It contained only a photo of their child under which were the words: "Escalate or cooperate?" Ex. 207.

As noted, Davies later that month filed his chapter 7 petition. While he indicated that Becker owed a $10,000.00 debt to him on his schedule B, he did not list Becker as a creditor, despite at various times acknowledging he owed her for her contributions toward payment of the first mortgage and other real property related expenses. And his schedule F did not reflect Becker's claim, whether he agreed with it or not, that he owed her at least $1,055 more. *See* Ex. 200.[14]

While asserting in schedule B that Becker owed him $10,000.00, Davies did not disclose on that schedule any of his other claims against her arising from the

---

[12] Testimony indicated this contact occurred in August 2016. Davies admitted he had included the brother's name in his police report in October 2015. The timing of his contact of Becker's brother's superiors nine months later validates Becker's interpretation.

[13] This email suggests, but the exhibit does not include, an attachment about "missing items" that apparently refers to those allegedly taken when Becker moved out over a year earlier.

[14] The schedules allow debtors to disclose claims made against them even though the same are contingent, unliquidated or disputed.

MEMORANDUM OF DECISION - 6

alleged October 2015 "theft" and "destruction" of personal property, which he had

asserted in a police report a little over a month earlier.[15]

On March 14, 2016, Davies received his discharge.  On that very same date,

he sent Becker an email captioned "1099" in which stated: "see attached for your

taxes.  The IRS has been notified."  Ex. 204.  Attached to the email was a Form

1099-MISC showing that Becker had been the recipient of $10,000 in "other

income."  Ex. 205.  When Becker responded that, "Well then distribution in full of

all my equity interest in the house will need to be paid[,]" Davies replied: "The

$10,000 was a loan not paid back so it counts as income for you according to my

tax advisor."  *Id.*  The emails that day continued.  Ex. 115.  Davies continued to

press the idea that the money was a loan, not a repayment or reimbursement of

equity, and he used the letter Becker earlier signed for Davies' bankruptcy counsel,

at Davies' insistence, about Becker paying "rent" in an attempt to counter her

arguments about equity.  The parties also continued to blend these disputes into

those about custody and care of their child and other disagreements.

About a month later, on April 7, 2016, Davies' chapter 7 was closed as a

no-asset case.

As noted, Becker had never been scheduled or listed by Davies as a

---

[15]  Davies also did not disclose any theft or other losses within the year preceding
bankruptcy on his statement of financial affairs.  Ex. 200 at 31.

MEMORANDUM OF DECISION - 7

creditor.  She was not served by the Court with any notice of the bankruptcy, *see*

Doc. Nos. 2, 12 (notice of filing and certificate of service) nor served with notice

of entry of discharge, *see* Doc. Nos. 25, 26 (discharge and certificate of service).

Davies did not establish that he gave her notice independently.

Becker admitted having known Davies was contemplating a bankruptcy

filing for quite some time, largely due to Davies' litigation with his ex-wife.  She

said that Davies provided several different reasons over time to explain why he

had not filed.

The evidence is unclear as to precisely when Becker became aware that a

bankruptcy had actually been filed.  She did acknowledge having been shown a

draft intake questionnaire sheet dated October 7, 2015 that Davies had prepared for

a law firm.  Ex. 203.[16]  But in this form, Davies had answered "No" to the question

"Does anyone owe you money for <u>any</u> reason?"  *Id.* at 3.

In March 14, 2016 emails, Davies mentioned that the early 2015 letter

Becker signed had been filed with the Court.  Ex. 115.  In reply, Becker stated

"Dave, I have no clue what you filed with bankruptcy court or what you said or

didn't say I paid or didn't pay.  You never divulged that to me, nor was I party to

the bankruptcy."  *Id.*  Thus, the emails and the testimony as a whole indicate

---

[16]  This was a different law firm from the one Davies actually retained for the filing.  The
firm representing Davies in the filing was the same one that had requested and received Becker's
April 2015 letter regarding "rent."  Why Davies filled out this form for the other law firm shortly
before filing with his initial attorney was not cogently explained.

MEMORANDUM OF DECISION - 8

Becker was aware of an actual bankruptcy filing by Davies at or about the time of these March 2016 emails.

### A.    The State Court Action

On January 27, 2017, Davies commenced suit against Becker in the Third Judicial District Court for the State of Idaho, Canyon County.  Ex. 101 (Complaint and Demand for Jury Trial in *Davies v. Becker*, Case No. CV-17-970) (the "State Court Action").  In it, Davies alleged Becker was obligated on a theory of breach of contract to repay the $10,000.00 and, in a later count, for an additional $550.00 in unpaid shared expenses, plus $629.16 on a cell phone bill.  He also asserted counts in "trover for conversion of chattel" (regarding an unreturned engagement ring, and for the taking and destruction of unspecified property while Davies was in Mexico), and for conversion and unjust enrichment regarding a BMW.[17]

On February 8, 2017, Becker's counsel sent a letter to Davies' counsel, responding to the various allegations and demanding that, unless the suit was promptly dismissed, Becker would respond with an answer and a counterclaim. Ex. 102.  When that did not happen, the Answer and Counterclaim was filed.  Ex. 111.[18]  In it, Becker made counterclaims for breach of contract (*i.e.*, for her interest

---

[17]  The BMW issue, and also allegations about a trailer taken by Becker, were also parts of the Davies' claims of theft or loss.  However, none of these claims against Becker were listed as assets on his schedule B, nor were they identified on his statement of financial affairs.

[18]  The date of filing of this pleading is not clear, but it reflects service on Davies' state
(continued...)

MEMORANDUM OF DECISION - 9

in the property, including a claim for the shortfall of $1,055 after receipt of the

$10,000.00 "equity" plus claims for reimbursement of her contributions toward the

property's taxes, insurance and improvements), and claims for intentional and

negligent infliction of emotional distress.

The bitter adversarial conduct of that litigation need not be examined at

length.  The salient point is that, at some point, Davies' counsel began arguing that

Becker's counterclaims were barred by the bankruptcy discharge.  Becker's

counsel responded by letter on July 13 arguing that Davies failed to list Becker in

his bankruptcy as a potential creditor and that failure "excepts Ms. Becker's claim

from discharge." Ex. 108.[19]  A subsequent July 21 letter from Davies' counsel

referenced Ninth Circuit case law establishing that, notwithstanding the wording of

§ 523(a)(3)(A), a discharge in a no-asset chapter 7 case is effective against alleged

creditors that were not listed in the bankruptcy petition.  Ex. 109.  The parties

agree that Becker then offered to amend the counterclaim to eliminate any claims

allegedly arising prior to the November 30, 2015 bankruptcy petition date, but

---

[18] (...continued)
court counsel on February 22, 2017.  *Id.*

[19]   Exhibit 104 is a copy of a PACER docket for Davies' case produced by Becker's
counsel during discovery in the State Court Action.  It bears a notation indicating it was
downloaded on December 23, 2016.  The evidence at hearing did not establish with certainty who
downloaded the document.  However Becker's counsel, in an affidavit filed prior to hearing,
acknowledged reviewing the bankruptcy filing before the counterclaim was filed.  Doc. No. 50-2
at 2.  He stated that his actions were not taken in intentional disregard of the consequences of a
bankruptcy discharge but, rather, were done in connection with and reliance on § 523(a)(3)(A).
*Id.*

MEMORANDUM OF DECISION - 10

insisted she could and would continue to defend the complaint's "loan"

contentions and press all other counterclaims, including the emotional distress

claims, that arose from Davies' acts after that date.  This was not acceptable to

Davies, who insisted amendment was not appropriate or sufficient, and that the

counterclaims must be dismissed in toto.  Things came to a head with the filing of

the instant Motion for contempt.

## ANALYSIS AND DISPOSITION

### A.  Davies' discharge injunction applies to Becker's attempted collection on her prepetition claims

Resolving Davies' Motion seeking contempt sanctions starts with

determining the extent and effect of a discharge.  Section 524 describes the

"[e]ffect of discharge" in a bankruptcy case:

> (a) A discharge in a case under this title—
> (1) voids any judgment at any time obtained, to the extent that
> such judgment is a determination of the personal liability of the
> debtor with respect to any debt discharged under section 727 . . .
> of this title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an act,
> to collect, recover or offset any such debt as a personal liability
> of the debtor, whether or not discharge of such debt is waived[.]

Section 727(b) provides that "except as provided in section 523 of this title,

a discharge under [§ 727(a)] discharges the debtor from all debts that arose before

the date of the order for relief under this chapter[.]" As this Court has stated:

"Simply put, then, a chapter 7 discharge will prohibit the collection of all of a

MEMORANDUM OF DECISION - 11

debtor's pre-bankruptcy debts, except those debts expressly excepted from

discharge under § 523(a)." *In re Dickerson*, 510 B.R. 289, 296 (Bankr. D. Idaho

2014).

One limit on the reach of the discharge is found in § 523(a)(3)(A), which

provides that a discharge is not effective as to a debt that is:

> neither listed nor scheduled under § 521(a)(1) of this title, with the
> name, if known to the debtor, of the creditor to whom such debt is
> owed, in time to permit—(A) if such debt is not of a kind specified in
> paragraph (2), (4), or (6) of this subsection, timely filing of a proof of
> claim, unless such creditor had notice or actual knowledge of the case
> in time for such timely filing[.]

As noted, Davies' bankruptcy schedules did not list Becker as a creditor, and she

relied on this exception to discharge in filing and asserting her counterclaim.  *See*

Ex. 108.  However, there is a further exception to the general rule of

§ 523(a)(3)(A) in no-asset chapter 7 cases.  *See Beezley v. California Land Title

Co. (In re Beezley)*, 994 F.2d 1433 (9th Cir. 1993) (holding that, in no-asset

chapter 7 cases, unscheduled pre-petition debts are nonetheless discharged); *see

also*, *In re Venegas*, 257 B.R. 41, 46–47 (Bankr. D. Idaho 2001).

Here, Becker held a pre-petition claim.  As stated in *Baroni v. Wells Fargo

Bank, N.A. (In re Baroni)*, 558 B.R. 916 (Bankr. C.D. Cal. 2016):

> Whether a claim exists generally is determined as of the date of
> the filing of the bankruptcy petition, irrespective of whether the claim
> is contingent or unmatured at the time.  *See* 11 U.S.C. § 502(b)(1); *In
> re SNTL Corp.*, 571 F.3d at 838: "[T]he Bankruptcy Code utilizes [the]
> 'broadest possible definition' of claim to ensure that 'all legal

MEMORANDUM OF DECISION - 12

obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case." *In re SNTL Corp.*, 571 F.3d 826, 838 (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929–30 (9th Cir. 1993)).

*Id.* at 922.[20]

Therefore, given *Beezley*, the discharge applies to Becker's claims that arose pre-petition and that she asserted in her state court counterclaim for breach of contract regarding her interest in the property, including the unpaid $1,055 of equity and reimbursement of her payments for taxes, insurance and improvements made prior to her moving out in October 2015.

### B.   Sanctions

"A party who knowingly violates the discharge injunction [of § 524(a)(2)] can be held in contempt under [§] 105(a) of the [B]ankruptcy [C]ode." *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2006). *See also Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). "[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) (*citing Hardy v. United States (In re Hardy)*, 97 F.3d 1384. 1390 (11th Cir. 1996)); *see also Nash v. Clark Cty. Dist. Attorney's Office (In re Nash)*, 464 B.R.

---

[20]   *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826 (9th Cir. 2009).

874, 880 (9th Cir. BAP 2012) (citing *Espinosa v. United Student Aid Funds, Inc.*,

553 F.3d 1193, 1205 n.7 (9th Cir. 2008), *aff'd* 559 U.S. 260 (2010)).  The debtor

must establish a discharge violation by clear and convincing evidence.  *Id.* (citing

*Espinosa*); *Zilog*, 450 F.3d at 1007.

As noted, Becker was never listed as a creditor and never received notice

from the Court about Davies' bankruptcy or the entry of Davis' discharge.  Despite

the lack of notice, Becker was likely aware in March 2016 that Davies had filed a

bankruptcy case, as reflected in Ex. 115 emails, and was certainly aware as of

December 2016 given the print-out of the Court's docket, Ex. 104.  This awareness

of the bankruptcy arose prior to the assertion of her February counterclaims in the

State Court Action.  However, Davies has not shown by clear and convincing

evidence that Becker knew the discharge injunction applied to her claims.

The Ninth Circuit stated that, in order to impose sanctions for contempt

under § 105(a), the movant must prove that the creditor (1) knew the discharge

injunction was applicable, and (2) intended the actions which violated the

injunction.  *Zilog*, 450 F.3d at 1007; *see also Emmert v. Taggart (In re Taggart)*,

548 B.R. 275, 286 (9th Cir. BAP 2016).  *Taggart* concluded:

> Taken together, *Bennett*, *Dyer*, and *Zilog* demonstrate that the Ninth
> Circuit has crafted a strict standard for the actual knowledge
> requirement in the context of contempt before a finding of willfulness
> can be made.  This standard requires evidence showing the alleged
> contemnor was aware of the discharge injunction *and* aware that it
> applied to his or her claim.  Whether a party is aware that the discharge

MEMORANDUM OF DECISION - 14

injunction is applicable to his or her claim is a fact-based inquiry which *implicates a party's subjective belief, even an unreasonable one*.

*Id.* at 288 (second emphasis added); *see also Zilog*, 450 F.3d at 1009 n.14 (noting that "To be held in contempt, the [creditor] must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to [her] claims.  To the extent that the deficient notices led the [creditor] to believe, even unreasonably, that the discharge injunction did not apply to [her] claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.").  "This is consistent with the Ninth Circuit's reluctance 'to hold an unwitting creditor in contempt.'  *In re 1601 W. Sunnyside Dr. #106, LLC*, 2010 WL 5481080, at *4 (Bankr. D. Idaho Dec. 30, 2010)."  *Taggart*, 548 B.R. at 288.

Here, Becker's counterclaim seeks liability for obligations that clearly arose prior to the November 30, 2015 petition date and, thus, are prepetition claims, the collection of which is barred by the discharge injunction.  The evidence establishes that Becker had knowledge of the bankruptcy filing before her counterclaim was filed.  But, the evidence does not establish that Becker knew the discharge injunction applied to her claims.

Under the record presented, the Court does not find Becker had the subjective belief, prior to receipt of the July 21, 2017 letter, that the discharge was applicable to her claims.  While mistaken, given the Ninth Circuit case law that developed in no-asset chapter 7 cases, that was nevertheless Becker's belief at the

MEMORANDUM OF DECISION - 15

time she filed her counterclaim on or about February 22, 2017.  It is the filing of

the counterclaim that is challenged, and there is inadequate evidence of knowledge

*and* subjective belief as of that date.

After receipt of the July 21 letter, it is clear that Becker offered to amend

her counterclaim to delete the prebankruptcy claim.  It was Davies' broad assertion

that the entirety of the counterclaim was violative of the discharge injunction and

thus needed to be dismissed in its entirety—an overstated and incorrect

proposition—that precluded Becker from remedying the problem as she had

offered.  Davies' insistence that Becker dismiss all of her counterclaim rather than

agreeing to allow it to be amended to eliminate her prepetition breach of contract

claim—the only claim that implicated the discharge injunction—exemplifies

Davies' litigious nature.[21]

The ultimate decision as to allowing amendment of the counterclaim and

dismissal of certain causes of action therein, and as to how Idaho Rules of Civil

Procedure 41(a) and (c), 13, and 15 should be applied would be the state district

court's.[22]  But the intransigence of Davies and his counsel to a simple solution

---

[21]  The litigation conduct in this Court, and the evidence as to Davies' conduct toward
Becker in the State Court Action, reflects an aggressive, if not abusive approach.  It echoes what
the Idaho Court of Appeals found in affirming $29,500 in attorneys' fees awarded Davies' ex-
wife in different litigation.  *See Davies*, 368 P.3d at 1020 (noting that "[David's] motions, and
what I've heard about the discovery tactics, seems to me more trying to increase the burden on
[Susan] in defending the lawsuit or prosecuting the lawsuit").

[22]  Such matters are committed to the trial court's discretion.  *Trimble v. Engelking*, 939
P.2d 1379, 1382 (Idaho 1997); *Hines v. Hines*, 934 P.2d 20, 26 (Idaho 1997).  The Court declines
(continued...)

MEMORANDUM OF DECISION - 16

Case 15-01578-TLM    Doc 57    Filed 10/26/17    Entered 10/26/17 15:27:02    Desc Main
Document     Page 17 of 22

eliminating the discharge violative claims and preserving the balance of the

defenses and counterclaims exacerbated the problem and effectively prevented

Becker from complying with this Court's discharge injunction once she was aware

that it applied.[23]

### C.    Davies can assert the contract ("loan") cause of action against Becker, and she may defend that claim without violating the discharge injunction

The alleged $10,000.00 "loan" was disclosed in Davies' schedule B, and it

constituted property of the estate under § 541(a)(1).  The chapter 7 trustee did not

administer this asset.  Closure of the bankruptcy as a no-asset case in April 2016

effected an abandonment of the cause of action under § 554(c).[24]  Davies was

therefore free to assert this cause of action against Becker personally after his

bankruptcy case closed.[25]

However, while discharge bars Becker's assertion of off-setting pre-

November 30, 2015 claims, it does not impose any limitation whatsoever on

---

[22] (...continued)
Davies' implicit suggestion that the Court address these procedural issues.

[23]  For completeness, the Court will note that Becker's counsel is not entirely without some fault in this regard.  The record presented indicates that both counsel engaged in overly zealous litigation.

[24]  That section provides: "(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."

[25]  Davies threatened to pursue that cause of action before his case was closed in April and the asset abandoned to him.  *See* Ex. 115 (March 2016 email).

MEMORANDUM OF DECISION - 17

Becker's *defense* of Davies' alleged "contract" action.  A creditor, though barred

by discharge from seeking affirmative relief on prepetition claims against the

debtor, is entitled to defend claims asserted against it by a debtor to negate

liability.  This defense could also include affirmative defenses with the exception

of any that are dependent on establishing and asserting affirmative *pre*bankruptcy

claims against the plaintiff.

Becker could therefore prepare and present her case that there was never a

"loan" at all and that she owes nothing to Davies.  In addition, her assertion of

offset to any potential loan liability based on *post*petition claims against Davies

would not violate the discharge.[26]

A similar construct attends the emotional distress claims, so long as Becker

---

[26]  A successful defense might raise the potential of a claim for attorneys' fees in favor of
Becker.  This issue has been addressed by case law.  "The purpose of the discharge injunction is
to protect the debtor from having to put on a defense in an improvident state court action or
otherwise suffer the costs, expense and burden of collection activity on discharged debts."
*Taggart*, 548 B.R. at 286 (quoting *In re Eastlick*, 349 B.R. 216, 229 (Bankr. D. Idaho 2004)).
But the situation changes when it is the debtor that initiates the post-bankruptcy litigation.
"[E]ven if the underlying claim arose prepetition, the claim for fees incurred postpetition on
account of that claim is deemed to have arisen postpetition if the debtor 'returned to the fray'
postpetition by voluntarily and affirmatively acting to commence or resume the litigation with the
creditor."  *Bechtold v. Gillespie (In re Gillespie)*, 516 B.R. 586, 591 (9th Cir. BAP 2014) (citing
*Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026–27 (9th Cir. 2005)).  This rule
prevents a debtor from using the discharge injunction as a sword that enables him to undertake
risk-free postpetition litigation at others' expense.  *Id.* (citing *Ybarra*, 424 F.3d at 1026)).  The
rule applies regardless of whether the litigation begins prepetition or postpetition, the nature of
the claim, or where the litigation takes place.  *Id.* at 591–92 (citing *Ybarra*, 424 F.3d at
1023–24)).  The key Ninth Circuit cases include *SNTL* and *Ybarra*, and also *Picerne Constr.
Corp. v. Castellino Villas A.K.F. LLC, (In re Castellino Villas, A.K.F. LLC)*, 836 F.3d 1028 (9th
Cir. 2016); *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998).  *See also
Baroni*, 558 B.R. at 922–25 (harmonizing these cases).  As the Circuit has observed, "the debtor's
decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more
akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties
prepetition."  *Castellino Villas*, 836 F.3d at 1035–36.

MEMORANDUM OF DECISION - 18

seeks a recovery based on post-November 30, 2015 conduct of Davies.  *Cf.*

*O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (holding that a

debtor who engages in postpetition illegal discriminatory conduct can be held

liable for that conduct, even if claims for similar illegal discriminatory conduct

occurring before the bankruptcy were discharged).

> **D.    Davies cannot assert pre-petition causes of action against Becker (other than the "loan") in the State Court Action.**

Davies seeks more than the contract damages for the $10,000 unpaid loan

he allegedly provided Becker in December 2014.  He also seeks $3,000 for a

minivan she allegedly purchased from Davies in the summer of 2015; an

engagement ring Becker allegedly sold to a pawn shop in October 2015; personal

property allegedly taken or destroyed when Becker moved out of the residence in

October 2015; the value of a BMW vehicle Becker allegedly forced Davies' son to

transfer to Becker in October 2015; and Becker's share of accrued utility bills that

she allegedly failed to pay when she moved out in October 2015.  These claims are

not Davies' to pursue.

Section 541(a)(1) provides that property of the bankruptcy estate includes

"[a]ll legal or equitable interests of the debtor in property as of the commencement

of the case."  Causes of action constitute property of the estate under § 541(a)(1)

and are assets that must be formally listed.  *In re JZ, LLC*, 357 B.R. 816, 823

(Bankr. D. Idaho 2006).  Based on Davies' submissions in the State Court Action

MEMORANDUM OF DECISION - 19

and this Court, it appears each of the above itemized causes of action against

Becker arose prior to Davies' November 30, 2015 petition date.

Pre-petition claims become property of the estate regardless of whether they

were scheduled, but unscheduled assets continue to belong to the estate and do not

revert back to a debtor when the case closes. *Pretscher-Johnson v. Aurora Bank,

FSB (In re Pretscher-Johnson)*, 2017 WL 2779977, *4 (9th Cir. BAP May 31,

2017) (citing *Cusano v. Klein*, 264 F.3d 936, 945–46 (9th Cir. 2001)).  For

abandonment under § 554(c) to occur, the assets had to be scheduled, and

mentioning an asset in the statement of financial affairs or otherwise is

insufficient. *Pretscher-Johnson*, 2017 WL 2779977 at *4–5 (holding that

"scheduled" in § 554(c) has a specific meaning). *See also In re Davis*, 2002 WL

33939739, *5 (Bankr. D. Idaho February 14, 2002) (holding that unscheduled

assets were not abandoned at closing and continue to belong to the bankruptcy

estate).

Here, Davies did not schedule these several alleged claims against Becker.

Because Davies' chapter 7 trustee neither administered nor abandoned the claims,

they remain property of the estate. *Lopez v. Specialty Rests. Corp. (In re Lopez)*,

283 B.R. 22, 28 (9th Cir. BAP 2002).  The chapter 7 trustee has exclusive standing

to prosecute them. *Davis*, 2002 WL 33939739 at *6. *See generally Estate of

Spirtos v. One San Bernardino Cty Superior Court Case Numbered SPR 02211*,

443 F.3d 1172, 1175–76 (9th Cir. 2006) (concluding that the Bankruptcy Code

MEMORANDUM OF DECISION - 20

endows the trustee with the exclusive right to sue on behalf of the estate).

A debtor not only lacks standing, but may be judicially estopped from asserting claims that should have been but were not scheduled in his bankruptcy. *Davis,* 2002 WL 33939739 at *6; s*ee also McCallister v. Dixon*, 303 P.3d 578 (Idaho 2013); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  As *Hamilton* stated, a debtor "is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings," *Id.* at 784.

Therefore, the causes of action not listed in Davies' schedules are property of the bankruptcy estate, and Davies has no standing to pursue those claims against Becker in the State Court Action.

### E.      Reappointment of a chapter 7 trustee

This case was reopened by Davies in order to pursue his Motion.[27]  The Court did not then require the appointment of a trustee.  *See* Rule 5010.  However, based on the record now before the Court, it will *sua sponte* order under Rule 5010 that the United States Trustee appoint a chapter 7 trustee in the reopened case. That trustee can then determine whether to pursue, dismiss or settle those alleged claims.  In addition, in Becker's objection to the Motion, she alleged Davies possessed a number of valuables and items of personal property one month before

---

[27]   Davies' motion to reopen was filed by his present counsel, not his former bankruptcy attorney.  New counsel, in representing Davies as debtor in this case, is required to comply with Rule 2016(b), and has failed to do so.

MEMORANDUM OF DECISION - 21

he filed bankruptcy, and he did not disclose them in his schedules. *See* Doc. No.

50 at 7–8. A trustee can also investigate these assertions along with any other

relevant matters.[28]

**CONCLUSION**

Upon the foregoing, having evaluated the entirety of the evidence, including

consideration of the credibility of witnesses and the weight to be given the

testimony, the Court will deny the Motion. An appropriate Order shall be entered.

Additionally, the Court shall enter an Order instructing the United States

Trustee to appoint a chapter 7 trustee to investigate and administer any undisclosed

assets of the estate in this reopened case.

DATED:  October 26, 2017



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[28]   Nothing in this Decision is intended to restrict or to direct the exercise of the trustee's
discretion in administering the estate.

MEMORANDUM OF DECISION - 22